# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**Steve Kovachevich**,

*Plaintiff-Appellant,*

v.

**National Mortgage Insurance Corporation**,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Eastern District of Virginia, Case No. 2:22-cv-00468-JKW

# REPLY BRIEF OF APPELLANT STEVE KOVACHEVICH

Kristi C. Kelly, VSB #72791
Matthew G. Rosendahl, VSB #93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Email: kkelly@kellyguzzo.com
Email: matt@kellyguzzo.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................5

    A.    "Under this Chapter" in § 4902(f)(2) Does Not Refer to the "Notification" of PMI Cancellation/Termination under § 4904, as NMIC Urges.............................................................5

    B.    Requiring Reimbursement of Unearned Premiums by Mortgage Insurers in the Event of Voluntary Cancellation Does Not Create a "Bizarre" or "Absurd" Result ...............................11

    C.    NMIC's Proposed Reading of "in accordance with paragraph (1)" Is Illogical and Contrary to the Plain Language of the Statute .................................................................................14

    D.    Kovachevich is Not Seeking to Enforce the Voluntary Termination Agreement against NMIC .............................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ali v. Fed. Bur. of Prisons*,
   552 U.S. 214 (2008).....................................................................17

*Barnhart v. Thomas*,
   540 U.S. 20 (2003).......................................................................10

*DaVita Inc. v. Va. Mason Mem. Hosp.*,
   981 F.3d 679 (9th Cir. 2020) .......................................................10

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019)...................................................................16

*Smith v. Berryhill*,
   139 S. Ct. 1765 (2019).................................................................17

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
   484 U.S. 365 (1988).......................................................................9

*United States v. Gonzales*,
   520 U.S. 1 (1997).........................................................................17

*Va. Int'l Terminals, Inc. v. Edwards*,
   398 F.3d 313 (4th Cir. 2005) .........................................................9


**Statutes & Other Atthorities**

12 U.S.C. § 4902.............................................................................18

12 U.S.C. § 4902(a)-(c).....................................................................5

12 U.S.C. § 4902(f).........................................................................17

12 U.S.C. § 4902(f)(1) ............................................................ *passim*

12 U.S.C. § 4902(f)(2) ............................................................ *passim*

12 U.S.C. § 4902(f)(2)—§ 4902(f)(1) .............................................9

12 U.S.C. § 4904............................................................... 8, 9, 10

12 U.S.C. § 4904(a) .........................................................................8

ii

12 U.S.C. § 4907(a) ..............................................................................18

12 U.S.C. § 4910(b) ............................................................ 1, 5, 11, 13

144 Cong. Rec. H5428-02, 1998 WL 391227 ................................. 13, 17

H.R. Rep. No. 105-55 ...................................................... 13, 17

# INTRODUCTION

NMIC argues that it is "illogical," "bizarre," and "absurd" to require mortgage insurers to reimburse premiums for insurance coverage that the actual parties to the mortgage have explicitly agreed is no longer required. It is "illogical," NMIC claims, because mortgage insurers would be required to reimburse unearned premiums following the voluntary cancellation of PMI, while servicers would not. It is also "bizarre," NMIC claims, because insurers would be required to transfer unearned premiums to servicers who would then not be obligated to return those premiums to the mortgage borrowers (mortgagors). And it is "absurd," NMIC claims, that mortgagors could seek reimbursement of unearned premiums under the HPA for the termination of PMI pursuant to a voluntary agreement between the mortgagor and the mortgage holder. But contrary to NMIC's claims, the principle that mortgage insurers must reimburse "any unearned premiums" in their possession upon notice of the cancellation or termination of PMI is well grounded in the plain language of § 4902(f)(2), and it is NMIC's alternative constructions that lead to the illogical, bizarre, and absurd results that it warns against.

Indeed, it is not illogical or absurd that the HPA would require mortgage insurers to reimburse unearned premiums under § 4902(f)(2) for any termination or cancellation of PMI "under this chapter," including voluntary terminations or cancellations under § 4910(b). As NMIC recognizes, mortgage insurers are not

parties to the voluntary agreement to cancel PMI, while the servicer, as representative of the mortgage holder, would be bound by the agreement. A mortgagor could therefore obtain unearned premiums from the servicer through the voluntary agreement, while he or she would not have recourse under that agreement to obtain premiums from the mortgage insurer. Subsection (f)(2) fills in this enforcement gap, ensuring that mortgagors can also obtain unearned premiums from mortgage insurers in the event of voluntary agreements to cancel or terminate PMI. In other words, subsection (f)(2) ensures that mortgage insurers are not left with an "unjustified windfall" when the insured party—the mortgage holder—agrees the insurance is no longer necessary.

Nor does requiring reimbursement of unearned premiums from a mortgage insurer to the servicer in the event of voluntary cancellation lead to a "bizarre" result. Contrary to NMIC's claims, reimbursement of unearned premiums to servicers under § 4902(f)(2) would not shift the windfall from the insurer to the servicer because subsection (f)(2) is clear that the reimbursed amounts are for "repayment in accordance with paragraph (1)," which instructs servicers to refund the premiums to the mortgagor. *See* 12 U.S.C. § 4902(f)(1). This language prevents both the insurer and the servicer from retaining unearned premiums—the exact objective of the HPA. Such a result is thus not only logical, but also intended. And it also ensures that mortgagors who have no say in whether the PMI policy purchased by the mortgage

holder is "nonrefundable," as NMIC avers was the case here, are not the ones left to suffer the consequences of that decision.

By contrast, NMIC's alternative reading of subsection (f)(2) defies both logic and the plain language of the statute. NMIC urges the Court to find that "under this chapter" refers to the "notification by the servicer" of the termination or cancellation of PMI, and not the termination or cancellation itself. In support of this argument, it points to § 4904, which governs notices of PMI cancellation/termination. But § 4904 requires only notices of PMI cancellation/termination from a mortgage servicer to *a mortgagor*. It does not require, nor does it even reference, notices by servicers to mortgage insurers like NMIC. Yet this notice is what NMIC claims triggers a mortgage insurer's obligation to reimburse unearned premiums. How Congress intended a notice that is not provided to an insurer to trigger its reimbursement obligation, NMIC does not explain, nor could it. Instead, a plain reading of subsection (f)(2), guided by the same construction used in subsection (f)(1), confirms that "under this chapter" refers to the scope of the termination/cancellation events that trigger an insurer's duty to reimburse. NMIC's alternative reading easily collapses under the plain language of the statute.

The same is true of NMIC's secondary argument, adopted by the district court, that "in accordance with paragraph (1)" as used in subsection (f)(2) renders insurers' reimbursement obligations coextensive with the obligations of servicers under

subsection (f)(1).  NMIC argues that "in accordance with paragraph (1)" modifies the phrase "an amount equal to the amount of the unearned premiums for repayment," meaning the amount of "the unearned premiums" is limited to the same extent as subsection (f)(1).  But NMIC again ignores the plain language of the statute, which defines "the unearned premiums" that insurers must transfer to servicers for repayment to the mortgagor as "any unearned premiums of [the relevant] mortgagor" in the insurer's "possession."  12 U.S.C. § 4902(f)(2).  Congress's use of "any" to define "the unearned premiums" that must be reimbursed by an insurer was intentionally expansive and is not limited by the "in accordance with paragraph (1)" language.  Instead, "in accordance with paragraph (1)" defines the purpose of the amounts transferred by an insurer to a servicer under subsection (f)(2), which are intended for repayment to the mortgagor as subsection (f)(1) instructs.  NMIC's argument disregards this language and improperly narrows what Congress clearly intended to be a broadly defined reimbursement obligation.

NMIC's alternative readings of subsection (f)(2) are divorced from the language of the statute, the purposes of the HPA, and the realities of the mortgage industry.  The district court's dismissal of Kovachevich's HPA claim, which was based on NMIC's reasoning, was in error and should be reversed and remanded.

# ARGUMENT

**A.** **"Under this Chapter" in § 4902(f)(2) Does Not Refer to the "Notification" of PMI Cancellation/Termination under § 4904, as NMIC Urges.**

NMIC first argues that reading "under this chapter" in § 4902(f)(2) to refer to termination or cancellation of PMI under any provision of the Act is "illogical" because it would require mortgage insurers to reimburse unearned premiums in a broader set of circumstances than mortgage servicers. Appellee Br. at 27-28. According to NMIC, the "logical" reading of subsection (f)(2) is instead that "under this chapter" refers to "notification by the servicer" of the termination or cancellation of PMI, which it argues refers to § 4904. *Id.* However, NMIC's proposed reading ignores the plain language of the HPA, the realities of the mortgage industry, and rules of statutory construction. Its argument should therefore be rejected.

To start, it is not illogical that the HPA requires mortgage insurers to reimburse unearned premiums upon the voluntary agreement of the mortgage holder/servicer to terminate PMI under 12 U.S.C. § 4910(b), and not only when the criteria under § 4902(a)-(c) are satisfied. Indeed, while the HPA establishes three statutorily defined circumstances when PMI is required to be terminated or cancelled under § 4902(a)-(c), the Act also recognizes that PMI can and should be cancelled or terminated voluntarily by agreement at any time under § 4910(b), which of course was an option even before the HPA. Unlike the statutorily created

cancellation/termination dates, however, which by their nature impose involuntary requirements on insurers and servicers, the HPA did not need to impose a reimbursement requirement on servicers in the event of voluntary cancellation or termination because when the mortgage holder voluntarily agrees that PMI is no longer required, that holder (and the servicer working on its behalf) will already have agreed to cease collecting premiums as of the date of the voluntary agreement. There would therefore be very few—if any—unearned premiums retained by the servicer, and a mortgagor could seek any unearned premiums through enforcement of the servicer's voluntary agreement to terminate or cancel PMI.

The same cannot be said of mortgage insurers, who will have already collected the unearned premiums from the mortgage servicer before the date of the voluntary agreement, and who are not themselves parties to that agreement. In this circumstance, it becomes necessary that the mortgage insurer return the portion of the premiums for the period after the insurance was voluntarily terminated/cancelled by the mortgage holder—*i.e.*, the unearned portion. It is precisely because insurers, and not servicers, will retain unearned premiums in the event of voluntary cancellation/termination by a mortgage holder, without any recourse to the mortgagor under the agreement cancelling or terminating the PMI, that § 4902(f)(2) requires reimbursement by insurers "under this chapter" and not only "under this

section." Otherwise, there is a hole in the reimbursement mechanism that the Act was designed to enforce.[1]

By contrast, NMIC's urged reading—that "under this chapter" refers to the "notification" of termination or cancellation of PMI and not the termination or cancellation itself—is the one that leads to the illogical result. Subsection (f)(2) requires insurers like NMIC to reimburse unearned premiums "[n]ot later than 30 days after notification by the servicer of termination or cancellation of private mortgage insurance under this chapter…." 12 U.S.C. § 4902(f)(2). NMIC asks the Court to find that the phrase "under this chapter" skips over the nouns "termination or cancellation" immediately preceding it and refers only to the "notification by the servicer" of a termination or cancellation, which it claims is governed by § 4904. Appellee Br. at 27-28. According to NMIC, this is the most logical reading of subsection (f)(2). *Id.*

---

[1] That there has been no opportunity for courts to address this issue until now is not surprising. The vast majority of borrowers do not prepay PMI premiums as Kovachevich did here, so when PMI is voluntarily cancelled before the cancellation or termination date, most homeowners do not have to worry about recouping thousands in prepaid premiums. And given the amounts involved, it is also not surprising that even those who are owed premiums do not bring costly litigation, especially on a matter of first impression. NMIC's assertion that Kovachevich's argument should be rejected because it has yet to be raised is thus a nonstarter.

However, contrary to NMIC's proposed reading, neither § 4904 nor any other provision of the HPA governs notifications of termination/cancellation by servicers to mortgage insurers.  Rather, § 4904 provides that:

(a)  In general

Not later than 30 days after the date of cancellation or termination of a private mortgage insurance requirement in accordance with this chapter, *the servicer shall notify the mortgagor* in writing—

(1)  that the private mortgage insurance has terminated and that the mortgagor no longer has private mortgage insurance; and

(2)  that no further premiums, payments, or other fees shall be due or payable by the mortgagor in connection with the private mortgage insurance.

12 U.S.C. § 4904(a) (emphasis added).  Section 4904 thus requires only notifications by a servicer to *the borrower* (i.e., the "mortgagor").  It does not require, nor does it reference, notification by servicers to *mortgage insurers*.  Moreover, NMIC readily admits that mortgage insurers are not privy to the servicer-mortgagor relationship, so insurers would not receive a § 4904 notice even as a practical matter.  Appellee Br. at 29 n.14.  How a notice that it is not provided to an insurer either under the terms of the Act or as a matter of course (or right) can trigger the insurer's obligation to reimburse unearned premiums, NMIC does not explain.  Far from being the most "logical" reading, therefore, NMIC's proposed construction in fact ignores the plain language of the HPA and the practical realities of the mortgage industry.

Reading subsection (f)(2) in context only confirms NMIC's flawed reading. Indeed, the provision immediately preceding § 4902(f)(2)—§ 4902(f)(1)—uses the modifier "under this section" to refer to "termination or cancellation" of PMI:

> Not later than 45 days after the termination or cancellation of a private mortgage insurance requirement under this section, all unearned premiums for private mortgage insurance shall be returned to the mortgagor by the servicer.

12 U.S.C. § 4902(f)(1). NMIC does not dispute this construction yet asserts that it somehow differs in the very next provision. But adjacent provisions on the same subject matter should be read as consistently as possible, and the most consistent reading of both subsections is that "under this section" and "under this chapter" refer to the scope of termination/cancellation events that trigger the reimbursement obligation in each provision. *See Va. Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005) ("[U]nder a longstanding canon of interpretation, adjacent statutory subsections that refer to the same subject matter . . . must be read *in pari materia* as if they were a single statute."); *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (citations omitted)). Indeed, there is no reason why the notification under § 4904 could not also serve as

the triggering event for servicers' reimbursement obligations, so Congress would have employed the same "notification . . . under this chapter" language in subsection (f)(1) if that was really the intended meaning. It did not.

Finally, NMIC's reading ignores the rule of the last antecedent, under which a limiting word or phrase modifies the words immediately preceding it and not the entire sentence. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *DaVita Inc. v. Va. Mason Mem. Hosp.*, 981 F.3d 679, 690 n.3 (9th Cir. 2020). Overlooking this rule, NMIC asks the Court to find that "under this chapter" refers to the noun "notification" and not the nouns "termination" and "cancellation" that immediately precede it. But if Congress intended this result, it would have put "under this chapter" after "notification." It would have also both (a) specified that insurers receive the notice of termination/cancellation provided to a mortgagor under § 4904, and (b) employed the same "notification . . . under this chapter" language in subsection (f)(1). It chose not to, instead using "under this chapter" in the same manner as "under this section" in subsection (f)(1) to define the qualifying termination or cancellation events for mortgage insurers and servicers respectively.

Simply put, NMIC's proposed reading ignores the plain language of the statute, the realities of the mortgage industry, and the rules of statutory construction. Its argument that "under this chapter" refers only to the "notification" of cancellation

or termination of PMI and not the cancellation or termination events themselves should thus be rejected.

**B.    Requiring Reimbursement of Unearned Premiums by Mortgage Insurers in the Event of Voluntary Cancellation Does Not Create a "Bizarre" or "Absurd" Result.**

NMIC also argues that reading § 4902(f)(2) to require reimbursement of unearned premiums to servicers in the event of a voluntary cancellation of PMI under § 4910(b) leads to a "bizarre result" because the servicer has "no obligation to give the funds to [the mortgagor] that it receives from [the insurer]." Appellee Br. at 30-31. NMIC argues that it would be particularly unfair here because the policy purchased by McClean Mortgage was non-refundable. *Id.* at 15, 31-32. And it claims that it is "absurd" that mortgagors could enforce a voluntary cancellation agreement against insurers under the HPA, but not servicers. *Id.* at 31. However, NMIC misunderstands the language of the statute and Kovachevich's argument.

Contrary to NMIC's reading, subsection (f)(2) does not require mortgage insurers to reimburse premiums to servicers, which the servicer can then retain as a windfall. Rather, subsection (f)(2) is clear that the reimbursement of unearned premiums by the "mortgage insurer" to the "servicer" is "*for repayment in accordance with paragraph (1)* [i.e., subsection (f)(1)]." 12 U.S.C. § 4902(f)(2) (emphasis added). Subsection (f)(1) in turn instructs that "all unearned premiums for [PMI] shall be returned to the mortgagor by the servicer." § 4902(f)(1). By its

11

plain language, therefore, subsection (f)(2) requires that the funds transferred from the mortgage insurer to the servicer be "returned to the mortgagor by the servicer." This is what "repayment in accordance with paragraph (1)" means. NMIC's claim of a "bizarre result" is thus unfounded.

NMIC's insistence that the servicer would obtain an unjust windfall because in this case the PMI policy purchased by McClean Mortgage was nonrefundable is equally misplaced. As NMIC readily admits, McClean Mortgage, not Kovachevich, selected the non-refundable policy, to which NMIC voluntarily agreed; Kovachevich had no say in that agreement. He never received an option to select among nonrefundable and refundable PMI policies. Instead, the only option presented to Kovachevich was whether to pre-pay the PMI premiums or to pay them monthly. He opted for prepaid premiums. That NMIC and McClean Mortgage contracted for a policy that was nonrefundable as to McClean Mortgage is their own decision to make as sophisticated business entities, and the purpose of the HPA is not to allocate risk among mortgage insurers and mortgage holders/servicers. Rather, the Act is designed to vindicate the rights of consumers like Kovachevich to obtain unearned premiums when PMI is no longer necessary, including when the parties to the mortgage agree to cancel or terminate the insurance. NMIC should have considered its reimbursement obligations to consumers when it contracted for a nonrefundable policy with McClean Mortgage, and it cannot cry foul regarding its own decisions.

Nor is there an "absurd result" in the inability to enforce the voluntary termination agreement against servicers under § 4910(b). Appellee Br. at 31. Although the voluntary agreement would be unenforceable vis-à-vis the HPA, it would still be enforceable as a matter of state contract law. That is precisely what the savings clause is intended to permit. But that agreement is between the mortgage holder (and servicer) and the mortgagor, not the mortgage insurer. With respect to the mortgage insurer, subsection (f)(2) provides a cause of action for the insurer's failure to reimburse "any unearned premiums" from a termination or cancellation of PMI "under this chapter," including premiums that are unearned because of a voluntary cancellation or termination. There is no absurdity in permitting a mortgagor to obtain unearned premiums from insurers pursuant to the HPA when those insurers are not otherwise parties to the voluntary termination/cancellation agreement that could be enforced outside of the Act. In fact, allowing mortgagors to seek unearned premiums from insurers in the broadest set of circumstances prevents the "unjustified windfall to insurance companies" that Congress sought to stamp out with the HPA. 144 Cong. Rec. H5428-02, 1998 WL 391227 (statement of Rep. Laflace); *see also* H.R. Rep. No. 105-55, at 6 (1997) (stating that the HPA was designed to ensure that "borrowers do not pay for insurance after all parties in the mortgage process agree that such insurance is no longer necessary").

**C.    NMIC's Proposed Reading of "in accordance with paragraph (1)" Is Illogical and Contrary to the Plain Language of the Statute.**

Recognizing that its proposed reading of "under this chapter" is unsupported by the language of the statute and purpose of the HPA, NMIC alternatively relies on the phrase "in accordance with paragraph (1)" at the end of subsection (f)(2) to argue that mortgage insurers owe only those premiums that servicers would owe under subsection (f)(1).  Specifically, NMIC argues that reading "in accordance with paragraph (1)" to modify the word "repayment," as Kovachevich urges, renders "in accordance with paragraph (1)" superfluous.  Appellee Br. at 33-34.  NMIC instead argues that "in accordance with paragraph (1)" modifies the phrase "an amount equal to the amount of the unearned premiums for repayment," which it appears to argue renders insurers' reimbursement obligation under subsection (f)(2) coextensive with the reimbursement obligation of servicers under subsection (f)(1).  *Id.*  NMIC's argument fails under its own reasoning, however, and ignores the language of subsection (f)(2).

Indeed, NMIC's own argument confirms exactly why "in accordance with paragraph (1)" is a necessary modifier of the term "repayment."  According to NMIC, subsection (f)(2) would require transfer of unearned premiums to servicers, with servicers having no obligation to then repay those premiums to the mortgagor.  Appellee Br. at 30-31.  But this is precisely why the phrase "in accordance with paragraph (1)" modifies "repayment": it directs that the "repayment" should be from

the servicer to the mortgagor, as paragraph (1) instructs. If "in accordance with paragraph (1)" were removed from subsection (f)(2), as NMIC argues could occur under Kovachevich's reading, then there would be no direction on where or to whom the "repayment" should be, and it would be just as plausible that "for repayment" refers to repayment of monies to the servicer, alone.[2] "[I]n accordance with paragraph (1)" thus provides necessary direction, stating clearly that the monies transferred by the insurer to the servicer are intended for repayment to the mortgagor. Far from being superfluous, therefore, "in accordance with paragraph (1)" as a modifier of "repayment" is a key part of the statute that addresses the very concern raised by NMIC.

By contrast, NMIC's argument that "in accordance with paragraph (1)" modifies the entire phrase "an amount equal to the amount of unearned premiums for repayment" fails in the context of subsection (f)(2), which states that:

> Not later than 30 days after notification by the servicer of termination or cancellation of private mortgage insurance under this chapter with respect to a mortgagor, a mortgage insurer that is in possession of any unearned premiums of that mortgagor shall transfer to the servicer of the subject mortgage an amount equal to the amount of the unearned premiums for repayment in accordance with paragraph (1).

---

[2] As NMIC acknowledges, the mortgage holder is the insured party who technically purchases and pays for the PMI, though the cost is passed along to the mortgagor. Appellee Br. at 6. Given this reality, without the "in accordance with paragraph (1)" language, it would be just as plausible for the phrase "for repayment" to mean repayment to the servicer, who technically paid the premiums on the holder's behalf, and not repayment to the mortgagor. This would result in the windfall to the servicer that NMIC argues against, hence the need for the "in accordance with" language.

12 U.S.C. § 4902(f)(2).  Read as a whole, "an amount equal to the amount of the unearned premiums" in subsection (f)(2) refers to the earlier phrase "any unearned premiums of that mortgagor."  The definite article "the" before the second mention of "unearned premiums" confirms that "the unearned premiums" is defined by reference to the earlier description of "any unearned premiums" in the same provision.  *See Nielsen v. Preap*, 139 S. Ct. 954, 964-65 (2019) (interpreting "the alien" in provision as referring back to the description of "any alien" that met certain conditions in the same provision and citing in support the Merriam-Webster's definition of "the" as a "'function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context'").  "[T]he unearned premiums" thus refers to "any unearned premiums of that mortgagor" in the insurer's "possession"; it is not then further limited by the phrase "in accordance with paragraph (1)," else it would have two conflicting meanings.[3]

NMIC's proposed reading ignores this language.  NMIC argues that "in accordance with paragraph (1)" limits the "amount equal to the amount of unearned premiums" to only the unearned premiums owed by the servicer under subsection

---

[3] For this reason, even NMIC's proposed reading would not lead to a different result. Read as a whole, the phrase "an amount equal to the amount of *the* unearned premiums for repayment in accordance with paragraph (1)" still requires reimbursement of "any unearned premiums" in the insurer's possession from the termination or cancellation of PMI "under this chapter."  NMIC would thus still be liable for failing to transfer "any unearned premiums" to LoanCare for repayment.

(f)(1), but subsection (f)(2) does not say that this is what the mortgage insurer must transfer to the servicer. Rather, it states clearly that the mortgage insurer should transfer "*any* unearned premiums of that mortgagor" to the servicer for "repayment in accordance with paragraph (1)." The use of "any" denotes that the insurer must transfer all of the unearned premiums in its possession, not simply the unearned premiums that the servicer owes under paragraph (1). *See Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019) ("Congress' use of the word 'any' suggest an intent to use that term 'expansive[ly].'" (quoting *Ali v. Fed. Bur. of Prisons*, 552 U.S. 214, 218-19 (2008))); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) (stating that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'" (citation omitted)). This language is consistent with the purpose of the HPA, which seeks to prevent unjust windfalls to mortgage insurers. *See* 144 Cong. Rec. H5428-02, 1998 WL 391227; *see also* H.R. Rep. No. 105-55, at 6 (1997).

NMIC fails to square this broad reimbursement obligation with its narrow construction. In the context of § 4902(f) and the Act as a whole, the more sensible reading of subsection (f)(2) is that a mortgage insurer must transfer to the servicer "any unearned premiums of [the relevant] mortgagor," including those premiums that are unearned by virtue of the voluntary termination or cancellation of PMI,

which are then intended for "repayment [by the servicer to the mortgagor] in accordance with paragraph (1)."

### D. Kovachevich is Not Seeking to Enforce the Voluntary Termination Agreement against NMIC.

Finally, NMIC argues that Kovachevich is seeking to "invent liability for NMIC" by "claiming that his agreement with LoanCare (who was acting on behalf of Freddie Mac) to cancel PMI based on the LTCV supersedes the provisions of § 4902 regarding the reimbursement of premiums that apply to mortgage insurers." Appellee Br. at 35. Again, NMIC misunderstands Kovachevich's argument.

Kovachevich is not seeking to enforce against NMIC the agreement with LoanCare to voluntarily terminate his PMI; he is seeking to enforce the plain language of § 4902(f)(2) that requires mortgage insurers to reimburse "any unearned premiums" from the "termination or cancellation of [PMI] under this chapter." Voluntary termination or cancellation of PMI qualifies as a "termination or cancellation of [PMI] under this chapter" that triggered NMIC's duty to transfer unearned premiums to LoanCare for repayment to Kovachevich. Section 4907 of the HPA permits Kovachevich to seek relief against NMIC for its violations of subsection (f)(2). *See* 12 U.S.C. § 4907(a) ("Any servicer, mortgagee, or mortgage insurer that violates a provision of this chapter shall be liable to each mortgagor to whom the violation relates…."). This is a straightforward cause of action under the plain language of the Act, and NMIC's claims of invented liability are meritless.

18

\* \* \*

Although attacking Kovachevich's reading as "illogical," "bizarre," and "absurd," NMIC's alternative construction of § 4902(f)(2) is the one that leads to illogical, bizarre, and absurd results.  NMIC relies on provisions of the HPA that have nothing to do with providing notice to insurers to claim that "under this chapter" refers to the "notification by the servicer" of the termination or cancellation of PMI.  Recognizing the fallacy of this argument, it then claims that the words "in accordance with paragraph (1)" in fact limit a provision requiring reimbursement of "any unearned premiums" retained by mortgage insurers in the event of the termination or cancellation of PMI.  Each of these arguments cannot withstand the plain language of subsection (f)(2) and the wider statute, which when interpreted according to established principles of statutory construction require reimbursement of all unearned premiums retained by a mortgage insurer, including those retained after a voluntary agreement to terminate or cancel PMI pursuant to § 4910(b).  The district court's findings to the contrary were in error, and its Order dismissing Kovachevich's HPA claim should be reversed and remanded.

Respectfully submitted,
**STEVE KOVACHEVICH**

By:/s/ *Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Matthew G. Rosendahl, VSB #93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202

Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Counsel for Appellant hereby certifies that:

1.　　This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32(b).　The brief contains 4,608 words (as calculated by the word processing system used to prepare this brief), excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.　　This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).　The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman style font.

Dated:　May 13, 2024　　　　　　　　By:/s/ *Kristi C. Kelly*
　　　　　　　　　　　　　　　　　　　　　　*Counsel for Appellant*